IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| EAST WEST BANK,<br><br>　　　　Plaintiff,<br><br>v.<br><br>QIR TECHNOLOGY HOLDINGS, INC., QUANTUM IR TECHNOLOGIES LLC, QIR AIR RESOURCES LLC, and QIR CEMENT THERMAL TECHNOLOGY LLC,<br><br>　　　　Defendants. | **ORDER APPOINTING RECEIVER**<br><br>Case No. 2:25-cv-00105-JNP-DAO<br><br>District Judge Jill N. Parrish |

Over about a year and a half, Defendants fraudulently obtained millions of dollars in financing and investment from various parties, including Plaintiff East West Bank, through a man named Mark C. Israelsen who died last fall. The parties now jointly move for the appointment of an equity receiver to address the preservation and disposition of assets involved in the fraud, administer those assets, prevent asset devaluation and waste, pursue claims against third parties holding assets obtained through fraudulent transfers, and operate the various Defendant entities (also called the QIR businesses). Based on the record in this action, the court finds that the appointment of a receiver is appropriate and necessary.

## BACKGROUND

Since the court writes primarily for the parties, it provides only a brief recitation of the facts. Between August 2022 and March 2024, Mr. Israelsen received about $73 million in financing and investments for the QIR businesses; he passed away in October 2024. Mr. Israelsen obtained

these funds through a complex scheme of fraud and misrepresentation. For example, he represented to lenders that the QIR businesses were thriving, supporting his representations with due-diligence and audit reports that appeared to be prepared by reputable accounting firms like Deloitte but that were actually fabricated. Mr. Israelsen also created numerous bogus shell companies to and from which the QIR businesses gratuitously transferred money to give the false impression that they were conducting actual business and receiving revenue. And he also transferred large sums of QIR business funds into his personal trust to conceal the assets from detection and convert them for personal use. Now his estate or trust owns the bogus shell companies and controls whatever assets Mr. Israelsen inappropriately transferred to them.

After Mr. Israelsen passed away, Alex D. Moglia was named president and secretary of the QIR businesses at the request of the secured lenders and investors. Mr. Moglia has not yet been able to fully unravel Mr. Israelsen's scheme and so has not been able to trace where the $73 million went. The QIR businesses have defaulted on at least one payment.

Before this federal action began, the QIR businesses sued Mr. Israelsen's estate and trust in Utah state court, moving for (and obtaining) a preliminary injunction ordering an asset freeze, cooperation for the QIR businesses to obtain additional information about the estate and trust assets, access to certain information related to Mr. Israelsen, and cooperation to allow Mr. Moglia to continue the day-to-day operations of the QIR businesses. *See* ECF No. 12-6. Even with this preliminary injunction, Mr. Moglia did not have the authority to further investigate the source of the funds used to make the various transfers in the fraudulent scheme.

## ANALYSIS

The decision whether to appoint a receiver "rests in the sound judicial discretion of the trial court." *Schiermeyer ex rel. Blockchain Game Partners, Inc. v. Thurston*, 746 F. Supp. 3d 1188,

2

1192 (D. Utah 2024) (internal quotation marks omitted). In making the decision, the court should consider whether the party seeking the appointment has a valid claim, the probability that fraudulent conduct has occurred or will occur to frustrate that claim, imminent danger that property will be concealed, lost, or diminished in value, the inadequacy of legal remedies, the lack of a less drastic but still sufficient equitable remedy, and the likelihood that appointing the receiver will do more good than harm. *Id.* (citing *Aviation Supply Corp. v. RSBI Aerospace, Inc.*, 999 F.2d 314, 316–17 (8th Cir. 1993)).

First, the court notes that the parties' agreement explicitly provides for the appointment of a receiver as a remedy in an event of default. *See* ECF No. 23-1 (Agreement) § 9.1(j) (authorizing lenders to "[a]pply for the appointment of a receiver, trustee, liquidator or conservator of the [c]ollateral"). Events of default, according to the agreement, include payment default and the discovery of misrepresentations, both of which have occurred here. The parties' "advance consent to the appointment of a receive[r]" in circumstances like these "is a strong factor weighing in favor of appointing one." *PNC Bank, Nat'l Ass'n v. Goyette Mech. Co., Inc.*, 15 F. Supp. 3d 754, 758 (E.D. Mich. 2014).

And the other factors enumerated above bolster the case for appointing a receiver, especially since the parties agree that that is what the court should do. Most prominently, the factual background of this case is replete with fraud by Mr. Israelsen, who made numerous misrepresentations to obtain over $70 million and then unlawfully diverted it for other purposes, including personal gain. Moreover, Mr. Israelsen's shell companies are nearly insolvent, threatening the lenders' ability to collect on any judgment they may secure.

The court is satisfied that this case warrants the drastic remedy of appointing a receiver. The parties agree that Mr. Moglia should be appointed as the receiver because of his industry

expertise, extensive professional experience, and involvement in investigating the issues in this case over the past several months, and the court sees no reason to deviate from the parties' proposal.

## CONCLUSION AND ORDER

The court takes exclusive jurisdiction and possession of all assets of the QIR businesses. (For present purposes, the court refers to the QIR businesses as the Receivership Defendants and their assets as the Receivership Assets). For the reasons above, the court **ORDERS** as follows:

(1) Alex D. Moglia of Moglia Advisors is appointed to serve without bond as Receiver for the estates of the Receivership Defendants.

## I. Asset Freeze

(2) Except as otherwise specified, all Receivership Assets remain frozen until further order of this court. Accordingly, all persons and entities with direct or indirect control over any Receivership Assets, other than the Receiver, are restrained and enjoined from directly or indirectly transferring, setting off, receiving, changing, selling, pledging, assigning, liquidating, or other disposing of or withdrawing such assets. This freeze includes but is not limited to Receivership Assets that are on deposit with financial institutions such as banks, brokerage firms, and mutual funds. This freeze also includes but is not limited to Receivership Assets held as real property, personal property, collectibles, metals, and cryptocurrencies.

## II. General Powers and Duties of Receiver

(3) The Receiver shall have all powers, authorities, rights, and privileges of the officers, directors, managers, and general and limited partners of the Receivership Defendants under applicable state and federal laws and by the governing charters, by-laws, articles, and agreements, in addition to all powers and authority of a receiver at equity and all powers

conferred upon receivers by 28 U.S.C. §§ 754, 959, and 1692 and Rule 66 of the Federal Rules of Civil Procedure.

(4) The trustees, directors, officers, managers, employees, investment advisors, accountants, attorneys, independent contractors, and other agents of the Receivership Defendants are subject to dismissal at the discretion of the Receiver, and the powers of any general partners, directors, officers, managers, and employees of the Receivership Defendants may be suspended at the discretion of the Receiver. Such persons and entities shall have no authority over the Receivership Defendants' operations or assets, except to the extent that the Receiver expressly grants and subject thereafter to performance of duties under the Receiver's supervision, direction, and control. The Receiver shall assume and control the operation of the Receivership Defendants and the Receivership Assets and shall preserve and pursue all the Receivership Defendants' claims. The Receiver shall reasonably comply with all terms and conditions of the Second Amended and Restated Loan and Security Agreement (the Loan Agreement) and related agreements with Plaintiff (collectively, the Loan Documents).

(5) Except for the Receiver, no other person holding or claiming any position of any sort with any of the Receivership Defendants shall possess any authority to act by or on behalf of any of the Receivership Defendants, except as expressly granted by the Receiver.

(6) Subject to the specific provisions in Sections III through XIV below, the Receiver shall have the following general powers and duties:

    A.  to use reasonable efforts to determine the nature, location, and value of all property interests of the Receivership Defendants and the Receivership Assets, which include but are not limited to cash, accounts, monies, funds, securities, credits,

5

effects, goods, chattels, lands and other real estate, premises, leases, claims, tangible property, intangible property, rights, and other assets, together with all rents, profits, proceeds, dividends, interest, or other income attributable thereto, of whatever kind, that the Receivership Defendants own, possess, have a beneficial interest in, or control directly or indirectly (collectively, the Receivership Estates);

B.  to take custody, control, and possession of all Receivership Assets and records relevant thereto from the Receivership Defendants; to sue for and collect, recover, receive, and take into possession from third parties all Receivership Assets and records relevant thereto;

C.  to manage, control, operate, secure, and maintain the Receivership Estates and hold in his possession, custody, and control all Receivership Assets pending further order of this court;

D.  to use Receivership Assets for the benefit of the Receivership Estates, making payments, disbursements, and incurring expenses as may be necessary or advisable in the ordinary course of business in discharging his duties as Receiver, provided, however, that the Receiver must obtain Plaintiffs' written consent to the extent that the Receiver intends to utilize Receivership Assets or their proceeds that are collateral subject to the liens of Plaintiff and lenders for any such payments of disbursements. Plaintiff and Receiver are authorized to enter into a budget without further order of the court that provides for the amounts the Receiver may be permitted to expend in connection with the administration of this receivership and the operation of the Receivership Estates;

E.  to take any action which, prior to the entry of this order, could have been taken by the officers, directors, partners, managers, trustees, or agents of the Receivership Defendants;

F.  to engage and employ persons, subject to Plaintiff's written consent, to assist him in carrying out his duties and responsibilities including but not limited to accountants, attorneys, independent contractors, securities traders, registered representatives, financial or business advisers, liquidating agents, real-estate agents, forensic experts, brokers, traders, or auctioneers;

G.  to take such action as necessary and appropriate for the preservation of Receivership Assets or to prevent the dissipation, destruction, or concealment of Receivership Assets;

H.  to issue subpoenas for documents and testimony consistent with the Federal Rules of Civil Procedure;

I.  to bring such legal actions based on law or equity in any state, federal, or foreign court as the Receiver deems necessary or appropriate in discharging his duties as Receiver;

J.  to pursue, resist, and defend all suits, actions, claims, and demands that may now be pending or that may be brought by or asserted against the Receivership Estates or the Receivership Defendants; and

K.  to take such other action as may be approved by the court.

III. <u>Access to Information</u>

(7) Absent a valid assertion of their respective rights against self-incrimination under the Fifth Amendment, the Receivership Defendants and the past or present officers, directors,

7

agents, managers, general and limited partners, trustees, attorneys, accountants, and employees of the Receivership Defendants, as well as those acting in their place, are hereby ordered and directed to preserve and turn over to the Receiver forthwith all paper and electronic information of or relating to the Receivership Defendants and all Receivership Assets. Such information shall include but is not limited to books, records, documents, accounts, passwords, keys, codes, and all other instruments and papers.

(8) Within 14 days of the entry of this order, the Receiver, on behalf of the Receivership Defendants, shall file with the court and serve upon Plaintiff a sworn statement listing (a) the identity, location, and estimated value of all Receivership Assets, including all persons and entities with possession, custody, or control of the Receivership Assets; (b) all employees (and their job titles), other personnel, attorneys, independent contractors, accountants, vendors, suppliers, consultants, and any other agents or contractors of the Receivership Defendants; and (c) the names, addresses, basis for holding any claim, and amounts of claims of all known creditors of the Receivership Defendants.

(9) Within 30 days of the entry of this order, the Receiver, on behalf of the Receivership Defendants, shall file with the court and serve upon Plaintiff a sworn statement and accounting with complete documentation covering the period from January 1, 2022, to the present, identifying

    A. every known account at every bank, brokerage, or other financial institution (a) over which Receivership defendants have signatory authority, and (b) opened by, in the name of, or for the benefit of, or used by, the Receivership Defendants;

    B. all known credit, bank, charge, debit, or other deferred-payment cards issued to or used by each Receivership Defendant, including but not limited to information such

as the issuing institution, the card or account number(s), all persons or entities to which a card was issued or with authority to use a card, the balance of each account or card as of the most recent billing statement, and all statements for the last 12 months;

C. all known assets received by any of them from any person or entity, including the value, location, and disposition of any assets so received; and

D. all known funds received by the Receivership Defendants in any way related to the conduct alleged in Plaintiff's complaint in this case (the submission must clearly identify, among other things, all known investors, the securities they purchased, the date and amount of their investments, and the current location of such funds).

(10) Absent a valid assertion of their respective rights against self-incrimination under the Fifth Amendment, the Receivership Defendants' past or present officers, directors, agents, attorneys, managers, shareholders, employees, independent contractors, accountants, debtors, creditors, managers, and general and limited partners, and other appropriate persons or entities, shall answer under oath to the Receiver all questions which the Receiver may put to them and produce all documents as required by the Receiver regarding the business and operations of the Receivership Defendants or in any manner related to the Receivership Assets, or any other matter relevant to the operation or administration of the receivership, the Receivership Estates, or the collection of funds due to the Receivership Defendants. If the Receiver deems it necessary to require the appearance of these persons or entities, the Receiver shall make its discovery requests in accordance with the Federal Rules of Civil Procedure.

(11) The Receiver shall have authority to issue subpoenas to compel testimony of persons or production of records consistent with the Federal Rules of Civil Procedure and applicable local rules, except for the provisions of Rule 26(d)(1) of the Federal Rules, concerning any subject matter within the powers and duties granted by this order.

(12) The Receivership Defendants are required to assist the Receiver in fulfilling his duties and obligations. As such, they must respond promptly and truthfully to all requests for information and documents from the Receiver and assist the Receiver in taking all actions necessary to marshal, secure, possess, and control the Receivership Assets.

IV. <u>Access to Books, Records, and Accounts</u>

(13) The Receiver is authorized to take immediate possession of all assets, bank accounts, and other financial accounts, books, records, and all other documents or instruments relating to the Receivership Defendants. All persons and entities other than Plaintiff and lenders having control, custody, or possession of any Receivership Assets are hereby directed to turn such property over to the Receiver.

(14) The Receivership Defendants, as well as their respective past or present agents, servants, independent contractors, officers, directors, employees, managers, accountants, advisors, attorneys, any persons acting for or on behalf of the Receivership Defendants, and any persons receiving notice of this order by personal service, email, facsimile transmission, or otherwise, having possession of the property, business, books, records, accounts, or assets of the Receivership Defendants are hereby directed to deliver those items to the Receiver, his agents, or employees.

(15) Except for Plaintiff and lenders, all banks, brokerage firms, financial institutions, and other persons or entities that have possession, custody, or control of any assets or funds held by,

in the name of, or for the benefit of, directly or indirectly, the Receivership Defendants that receive actual notice of this order by personal service, email, facsimile transmission, or otherwise, shall

    A.  recognize the appointment of the Receiver as the solely authorized representative of the Receivership Defendants and the Receivership Estates with respect to the Receivership Assets;

    B.  not liquidate, transfer, sell, convey, or otherwise transfer any assets, securities, cash, funds, or accounts in the name of or for the benefit of the Receivership Defendants except upon instructions from the Receiver;

    C.  not exercise any form of set-off, alleged set-off, lien, or any form of self-help whatsoever, or refuse to transfer any funds or assets to the Receiver's control without the permission of this court;

    D.  within five business days of receipt of that notice, or such other time that may be agreed to in writing by the Receiver, file with the court and serve on the Receiver and counsel for Plaintiff a certified statement setting forth, with respect to each such account or other asset, the balance in the account or description of the assets as of the close of business on the date of receipt of the notice; and

    E.  cooperate expeditiously in providing information and transferring funds, assets, and accounts to the Receiver or at the direction of the Receiver.

(16) The Receiver is authorized to open one or more bank accounts utilizing the Receivership Defendants' respective tax-identification and EIN numbers and is authorized but not obligated to make payments and disbursements in the ordinary course of business as may be needed and proper for the preservation of the Receivership Assets, provided, however,

that the Receiver must obtain Plaintiff's consent for any payment or disbursement in excess of $20,000 absent further order of the court. The Receivership Defendants are obligated to provide the Receiver with their EIN and tax-identification numbers and such other documents as are reasonably required to open one or more receivership bank accounts in the name of the Receivership Defendants in care of the Receiver for the purposes of operating and maintaining the Receivership Assets. The Receiver may in his sole discretion close existing accounts in the name of the Receivership Defendants.

V. Access to Real and Personal Property

(17) The Receiver is authorized to take immediate possession of all personal property of the Receivership Defendants, wherever located, including but not limited to electronically stored information, computers, laptops, hard drives, external storage drives, and any other such memory, media, or electronic storage devices, books, papers, data-processing records, evidence of indebtedness, bank records and accounts, savings records and accounts, brokerage records and accounts, certificates of deposit, stocks, bonds, debentures and other securities and investments, contracts, mortgages, furniture, office supplies and equipment, leases, goods, and any other tangible and intangible property.

(18) The Receiver is authorized to take immediate possession of all real property of the Receivership Defendants, wherever located, including but not limited to all ownership and leasehold interests and fixtures. Upon receiving actual notice of this order by personal service, email, facsimile transmission, or otherwise, all persons, other than law-enforcement officials acting within the course and scope of their official duties, are prohibited from (a) entering such premises; (b) removing anything from such premises; or

(c) destroying, concealing, or erasing anything on such premises without the express written permission of the Receiver.

(19) To execute the express and implied terms of this order, the Receiver is authorized to change door locks to the premises described above and shall have exclusive control of any keys, passwords, and codes. The Receivership Defendants, or any other person acting or purporting to act on their behalf, are ordered not to change the locks, passwords, or codes in any manner, nor to have duplicate keys made, nor shall they have keys in their possession during the term of the Receivership.

(20) The Receiver is authorized to open all mail directed to or received by or at the offices or post office boxes of the Receivership Defendants, and to inspect all mail opened prior to the entry of this order to determine whether items or information therein fall within the mandates of this order.

VI. <u>Notice to Third Parties</u>

(21) The Receiver shall reasonably promptly give notice of his appointment to all known officers, directors, agents, employees, shareholders, creditors, debtors, managers, and general and limited partners of the Receivership Defendants as the Receiver deems necessary or advisable to effectuate the operation of the Receivership and preserve the Receivership Assets.

(22) All persons and entities owing any obligation, debt, or distribution with respect to an ownership interest to any Receivership Defendant shall, until further ordered by this court, pay all such obligations in accordance with the terms thereof to the Receiver, and his receipt of such payments shall have the same force and effect as if the Receivership Defendant had received such payment.

(23) In furtherance of his responsibilities in this matter, the Receiver is authorized to communicate with and serve this order upon any person, entity, or government office that he deems appropriate to inform them of the status of this matter or the financial condition of the Receivership Estates. All government offices that maintain public files of security interests in real and personal property shall, consistent with such office's applicable procedures, record this order upon the request of the Receiver or Plaintiff.

(24) The Receiver is authorized to instruct the U.S. Postmaster to hold or reroute mail that is related, directly or indirectly, to the business, operations, or activities of any of the Receivership Defendants (referred to as the Receiver's Mail), including all mail addressed to or for the benefit of the Receivership Defendants. The Postmaster shall not comply with, and shall immediately report to the Receiver, any change of address or other instruction given by anyone other than the Receiver concerning the Receiver's Mail. The Receivership Defendants shall not open any of the Receiver's Mail and shall immediately turn over such mail, regardless of when received, to the Receiver. Any mail appearing to contain privileged information, and any mail not falling within the mandate of the Receiver, shall be released to the named addressee by the Receiver. The foregoing instructions shall apply to any proprietor, whether individual or entity, of any private mailbox, depository, business or service, or mail courier or delivery service, hired, rented, or used by the Receivership Defendants. The Receivership Defendants shall not open a new mailbox or take any steps or make any arrangements to receive mail in contravention of this order, whether through the U.S. mail, a private mail depository, or courier service.

(25) Subject to payment for services provided, any entity furnishing water, electric, telephone, sewage, or garbage or trash removal services to the Receivership Defendants shall maintain

14

such service and transfer any such accounts to the Receiver unless instructed to the contrary by the Receiver.

(26) The Receiver is authorized to assert, prosecute, and negotiate any claim under any insurance policy held by or issued on behalf of the Receivership Defendants or their officers, directors, agents, employees, or trustees, and to take any and all appropriate steps in connection with such policies.

(27) The Receiver is authorized to maintain, obtain, renew, or replace all reasonably necessary and prudent insurance policies with appropriate coverages and limits of insurance, relating to the ownership, operation, maintenance, and management of the Receivership Assets including but not limited to fire, extended coverage, property damage, rental or business income loss, general liability, automobile liability, fidelity or crime, employment practices liability, fiduciary, and workers' compensation coverage, and to modify any existing or new insurance policies if he deems appropriate. The Receivership Defendants shall fully cooperate with Receiver in this regard. The Receiver and Moglia Advisors shall be either the named insureds or additional insureds on all liability policies, as he directs, and Plaintiff may be an additional insured on all liability insurance policies. The Receiver may cancel any existing insurance policy and shall be entitled to receive and hold any premium refunds from any existing insurance policies for the Receivership Assets, with the disposition thereof subject to further order of the court. The Receivership Defendants and their employees and agents are prohibited from cancelling, reducing, modifying, or non-renewing any and all insurance policies in existence with respect to the Receivership Assets until the Receiver has notified the Receivership Defendants that the above-described coverage has been obtained by the Receiver, and any refunds received by the Receivership

Defendants arising from the cancellation of its insurance coverage on the Receivership Assets shall be turned over to the Receiver. No insurance company shall be permitted to terminate coverage, non-renew, or refuse coverage based upon prior unpaid premiums or claims history, or because of the appointment of the Receiver or the allegations set forth in the complaint. The Receiver is authorized to maintain appropriate insurance, authorized to continue any current policies in place, and authorized to purchase further insurance regarding the Receivership Assets, which includes him and the parties specified in this paragraph as an additional insured, as he deems appropriate. The Receivership Defendants shall fully cooperate with the Receiver in adding the Receiver and Plaintiff as additional named insureds and the Receiver (and, to the extent required in any applicable loan documents, the appropriate person or entity) as the loss payee(s) on all insurance relating to the operation and management of the Receivership Assets including but not limited to fire, extended coverage, property damage, liability, fidelity, errors and omissions, and workers' compensation, and modifying the policies if deemed appropriate by the Receiver. Notwithstanding the above, the Receiver at his sole discretion has the option to obtain new insurance coverage on any of the Receivership Assets.

VII. Injunction Against Interference with the Receiver

(28) Subject to paragraph 29, the Receivership Defendants and all persons receiving notice of this order by personal service, email, facsimile, or otherwise, are hereby restrained and enjoined from directly or indirectly taking any action or causing any action to be taken, without the express written agreement of the Receiver and Plaintiff, which would

  A. interfere with the Receiver's efforts to take control, possession, or management of any Receivership Assets, with such prohibited actions including but not limited to

16

using self-help or executing or issuing or causing the execution or issuance of any court attachment, subpoena, replevin, execution, or other process for the purpose of impounding or taking possession of or interfering with or creating or enforcing a lien upon any Receivership Assets;

B. hinder, obstruct, or otherwise interfere with the Receiver in the performance of his duties, with such prohibited actions including but not limited to concealing, destroying, or altering records or information;

C. dissipate or otherwise diminish the value of any Receivership Assets, such as by releasing claims; disposing, transferring, exchanging, assigning, or in any way conveying any Receivership Assets; enforcing judgments, assessments, or claims against any Receivership Assets or any Receivership Defendant; or attempting to modify, cancel, terminate, call, extinguish, revoke, or accelerate (the due date) of any lease, loan, mortgage, indebtedness, security agreement, or other agreement executed by any Receivership Defendant or that otherwise affects any Receivership Assets; or

D. interfere with or harass the Receiver or interfere in any manner with the exclusive jurisdiction of this court over the Receivership Estates.

(29) Subparts A and C of paragraph 28 shall not apply to Plaintiff. To avoid doubt, Plaintiff's Loan Agreement and Loan Documents with the Receivership Defendants remain in full force and effect, and Plaintiff retains all rights and remedies in relation thereto. Plaintiff and the Receiver may enter into any amendments or modifications to the Loan Agreements and Loan Documents as Plaintiff and the Receiver deem advisable. Plaintiff shall be at all times entitled to enforce and exercise all rights and remedies available to Plaintiff under

the Loan Agreement, Loan Documents, and applicable law, including but not limited to the enforcement of security interests, pursuit of judicial and non-judicial foreclosure, and the sale or other commercial disposition of any collateral that is a Receivership Asset. Plaintiff in its sole and absolute discretion may but is not obligated to advance funds in accordance with the Loan Agreement with any such advanced funds being treated as provided in the Loan Agreement and Loan Documents.

(30) The Receivership Defendants shall cooperate with and assist the Receiver in the performance of his duties. The Receiver shall promptly notify the court and Plaintiff's counsel of any failure or apparent failure of any person or entity to comply in any way with the terms of this order.

## VIII. Stay of Litigation

(31) The following proceeding, excluding this proceeding and all police or regulatory actions and actions of Plaintiff related to this enforcement action or rights and remedies available to Plaintiff under the Loan Agreement, Loan Documents, or applicable law, is stayed until further order of this court: *At-Automation, Inc. v. Quantum IR Technologies, LLC*, Case No. 259908169 (Third Judicial Court, Salt Lake County, Utah).[1]

---

[1] The parties have also asked for a stay of Case No. 250901237 (Third Judicial District, Salt Lake County, Utah) (the "Probate Litigation"). However, after considering the parties' supplemental briefing, the court has determined that the Anti-Injunction Act, 28 U.S.C. § 2283, prevents it from issuing an injunction to stay that proceeding—even under the "in aid of" exception to the Anti-Injunction Act—because state-court jurisdiction over it attached before federal jurisdiction attached in this case. *See Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 506 (6th Cir. 2022) (explaining that the "in aid of" exception may apply "where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property *before the state court does*" (emphasis added) (internal quotation marks omitted)).

The court's determination that it may not issue the requested injunction in the Probate Litigation should not hinder the parties' efforts to resolve this dispute, however. Defendants here are the

(32) The court hereby enjoins all future proceedings involving (a) the Receiver, in his capacity as Receiver; (b) any Receivership Assets, wherever located; (c) any of the Receivership Defendants, including subsidiaries and partnerships; or (d) any of the Receivership Defendants' past or present officers, directors, managers, agents, or general or limited partners sued for or in connection with any action taken by them while acting in such capacity of any nature, whether as plaintiff, defendant, third-party plaintiff, third-party defendant, or otherwise. The prohibition against commencing a new legal proceeding shall not apply, however, to the filing of a new action or asserting any claim that is at risk of being time-barred or otherwise barred if not filed. In such a legal proceeding, the party bringing suit or asserting claims shall take only sufficient steps to avoid the claims becoming time-barred or otherwise barred.

(33) As to a cause of action accrued or accruing in favor of one or more of the Receivership Defendants against a third person or party, any applicable statute of limitation is tolled during the period in which this injunction against commencement of legal proceedings is in effect as to that cause of action.

IX. Managing Assets

(34) For the Receivership Estates, the Receiver shall establish one or more custodial accounts at a federally insured bank to receive and hold all cash-equivalent Receivership Assets (the Receivership Funds).

---

plaintiffs in the Probate Litigation, so they may move for a stay directly in that court to enable Mr. Moglia, the now-appointed receiver, to take control of that litigation.

(35) The Receiver may, without further order of this court and so long as the Receiver complies with any applicable provision of the Loan Agreement and Loan Documents, transfer, compromise, or otherwise dispose of any Receivership Assets, other than real estate, in the ordinary course of business, on terms and in the manner the Receiver deems most beneficial to the Receivership Estates, and with due regard to the realization of the true and proper value of such Receivership Assets. Notwithstanding the foregoing, the Receiver may not transfer, compromise, or otherwise dispose of any Receivership Assets subject to any lien in favor of Plaintiff or otherwise subject to the Loan Agreement and Loan Documents without Plaintiff's consent or further order of this court.

(36) Subject to the paragraph immediately below, the Receiver is authorized to locate, list for sale or lease, engage a broker for sale or lease, cause the sale or lease, and take all necessary and reasonable actions to cause the sale or lease of all real, personal, and other property in the Receivership Estates, either at public or private sale, on terms and in the manner the Receiver deems most beneficial to the Receivership Estates, and with due regard to the realization of the true and proper value of such real property. Notwithstanding the foregoing, the Receiver may not sell or lease any Receivership Assets subject to any lien in favor of Plaintiff or other lenders or otherwise subject to the Loan Agreement and Loan Documents without Plaintiff's consent or further order of this court.

(37) Upon further order of this court, according to such procedures as may be required by this court or additional authority such as 28 U.S.C. §§ 2001 and 2004, the Receiver will be authorized to sell and transfer clear title to all real and other property in the Receivership Estates as Plaintiff may consent to.

(38) The Receiver is authorized to take all actions to manage, operate, maintain, or wind-down business operations of the Receivership Estates, including (a) furloughing, terminating, or engaging employees on a contract basis; (b) closing the business; and (c) making legally required payments to creditors, employees, and agents of the Receivership Estates and communicating with vendors, investors, governmental and regulatory authorities, and others as appropriate.

(39) The Receiver may but is not obligated to take all necessary steps to enable the Receivership Funds to obtain and maintain the status of a taxable Settlement Fund within the meaning of § 468B of the Internal Revenue Code and of any regulations when applicable, whether proposed, temporary, or final, or pronouncements thereunder, including the filing of the elections and statements contemplated by those provisions. The Receiver may be designated the administrator of the Settlement Fund under Treas. Reg. § 1.468B-2(k)(3)(i) and may satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2, including but not limited to (a) obtaining a taxpayer identification number; (b) timely filing applicable federal, state, and local tax returns and paying taxes reported thereon; and (c) satisfying any information, reporting, or withholding requirements imposed on distributions from the Settlement Fund. The Receiver may cause the Settlement Fund to pay taxes in a manner consistent with treatment of the Settlement Fund as a Qualified Settlement Fund. In the event the Receiver chooses to maintain the status of a taxable Settlement Fund, the Receivership Defendants shall cooperate with the Receiver in fulfilling the Settlement Fund's obligations under Treas. Reg. § 1.468B-2.

X. <u>Investigate and Prosecute Claims</u>

(40) Subject to any requirement in Section VIII above that leave of this court is required to resume or commence certain litigation, the Receiver is authorized, empowered, and directed to investigate, prosecute, defend, intervene in, or otherwise participate in, compromise, or adjust actions in any state, federal, or foreign court or proceeding of any kind as may in his discretion and with Plaintiff's consent be advisable or proper to recover or conserve Receivership Assets.

(41) Subject to his obligation to expend receivership funds in a reasonable and cost-effective manner, the Receiver is authorized, empowered, and directed to investigate the manner in which the financial and business affairs of the Receivership Defendants were conducted and, upon obtaining either Plaintiff's consent or leave of this court, to institute such actions and legal proceedings for the benefit and on behalf of the Receivership Estates as the Receiver deems necessary and appropriate. The Receiver may seek, among other legal and equitable relief, the imposition of constructive trusts, disgorgement of profits, asset turnover, avoidance of fraudulent transfers, rescission and restitution, collection of debts, and such other relief from this court as may be necessary to enforce this order. The Receiver must provide prior notice to counsel for Plaintiff before commencing investigations or actions.

(42) The Receiver hereby holds and is therefore empowered to waive all privileges, including the attorney-client privilege, held by all entity Receivership Defendants.

(43) The Receiver has a continuing duty to ensure that there are no conflicts of interest between the Receiver, his Retained Personnel (as that term is defined in paragraph 47 below), and the Receivership Estates.

XI. <u>Bankruptcy Filing</u>

(44) The Receiver may seek authorization of this court to file voluntary petitions for relief under Title 11 of the U.S. Code (the Bankruptcy Code) for the Receivership Defendants. If one or more of the Receivership Defendants is placed in bankruptcy proceedings, the Receiver may become, and may be empowered to operate each of the Receivership Estates as, a debtor in possession. In such a situation, the Receiver shall have all the powers and duties provided to a debtor in possession under the Bankruptcy Code to the exclusion of any other person or entity. Under paragraph 3 above, the Receiver is vested with management authority for all entity Receivership Defendants and may therefore file and manage a Chapter 11 petition.

(45) The provisions of this order bar any person or entity other than the Receiver from placing any of the Receivership Defendants in bankruptcy proceedings.

XII. <u>Liability of Receiver</u>

(46) Until further order of this court, the Receiver shall not be required to post bond or give an undertaking of any type in connection with his fiduciary obligations in this matter.

(47) The Receiver and his agents acting within scope of such agency (referred to as Retained Personnel), are entitled to rely on all outstanding rules of law and orders of this court and shall not be liable to anyone for their own good-faith compliance with any order, rule, law, judgment, or decree. In no event shall the Receiver or Retained Personnel be liable to anyone for their good-faith compliance with their duties and responsibilities as Receiver or Retained Personnel.

(48) This court shall retain jurisdiction over any action filed against the Receiver or Retained Personnel based upon acts or omissions committed or allegedly committed in their representative capacities.

(49) If the Receiver decides to resign, the Receiver shall first give written notice to Plaintiff's counsel of record and the court of his intention, and the resignation shall not be effective until the court appoints a successor or 10 business days from the date of Receiver's notice, whichever comes first. All accrued operating expenses through and including the effective date of the Receiver's resignation, including all the Receivership's tax and/or other governmental obligations incurred by the Receivership estate, shall be paid from the operating-expense portion of the holdback as referenced in paragraph 60 in this order, to the extent funds are available. Plaintiff also shall be entitled to terminate the Receiver's appointment upon written notice to the Receiver and the court and seek appointment of a replacement, and the termination shall not be effective until the court appoints a successor or 10 business days from the date of Plaintiff's notice, whichever comes first. The Receiver shall then follow such instructions as the court may provide.

XIII. Recommendations and Reports

(50) The Receiver is authorized, empowered, and directed to consult with Plaintiff to develop a plan (a Receivership Plan) for the fair, reasonable, and efficient attempt to market the companies and their software and technology, while pursuing the recovery of all remaining, recovered, and recoverable Receivership Assets that may include the ongoing operation of certain of the Receivership Defendants.

(51) The Receiver shall file the Receivership Plan in this action with service copies to counsel of record no later than 180 days following his appointment absent Plaintiff's agreement to a longer period of time or further order of the court.

(52) Within 30 days of the end of each calendar quarter, the Receiver shall first consult with Plaintiff and then file and serve a full report and accounting of each of the Receivership Estates (a Quarterly Status Report), reflecting to the best of the Receiver's knowledge as of the period covered by the report the existence, value, and location of all Receivership Assets and of the extent of liabilities, both those claimed to exist by others and those the Receiver believes to be legal obligations of the Receivership Estates.

(53) Each Quarterly Status Report shall contain the following:

    A.  a summary of the operations of the Receiver;

    B.  the amount of cash on hand, the amount and nature of accrued administrative expenses, and the amount of encumbered and unencumbered funds in the estate;

    C.  a schedule of all the Receiver's receipts and disbursements (to be attached as Exhibit A to the Quarterly Status Report) with one column for the quarterly period covered and a second column for the entire duration of the receivership;

    D.  a description of all known Receivership Assets, including approximate or actual valuations, anticipated or proposed dispositions, and reasons for retaining assets for which no disposition is intended;

    E.  a description of liquidated and unliquidated claims held by the Receivership Estates, including the need for forensic or investigatory resources, approximate valuations of claims, and anticipated or proposed methods of enforcing such claims

(including likelihood of success in reducing the claims to judgment and collecting such judgments);

F.  a list of all known creditors with their addresses and the amounts of their claims;

G.  the status of creditor claims proceedings after such proceedings have been commenced; and

H.  the Receiver's recommendations for a continuation or discontinuation of the receivership and the reasons for the recommendations.

(54) At the request of Plaintiff, the Receiver shall provide Plaintiff with any documentation that Plaintiff deems necessary to meet its reporting requirements, that is mandated by statute or Congress, or that is otherwise necessary to further Plaintiff's mission or is required under Plaintiff's Loan Documents with the Receivership Defendants.

XIV. Fees, Expenses, and Accountings

(55) Subject to other provisions of this order, the Receiver need not obtain court approval prior to the disbursement of Receivership Estates' funds for expenses in the ordinary course of the administration and operation of the receivership or payments due to Plaintiff under the Loan Agreement or Loan Documents. The Receiver shall make all payments due to Plaintiff under the Loan Agreement and Loan Documents as such funds are available. Further, prior court approval is not required for payments of applicable federal, state, or local taxes, and other governmental obligations. Nonetheless, the Receiver is authorized to make a motion to seek approval from the court for the payment of any such taxes, and other governmental obligations.

(56) Subject to the paragraph immediately below, the Receiver is authorized to solicit persons and entities, including Retained Personnel, to assist him in carrying out the duties and

responsibilities described in this order. The Receiver is authorized to engage Moglia Advisors and Nate Pettitt to assist him in his duties. The Receiver is authorized to retain Parr Brown Gee & Loveless to serve as his legal counsel. The Receiver is authorized to retain TechLaw Venture, Rajah & Tann, and Maschoff Brennan to serve as additional legal counsel as needed. The Receiver is authorized to retain Andrews Advisory Group for forensic accounting as needed. The Receiver is also authorized to retain Teuscher Walpole, LLC, to serve as the tax-accounting firm. The Receiver shall not engage any other Retained Personnel without first obtaining an order of the court and consent from Plaintiff authorizing such engagement.

(57) The Receiver and Retained Personnel are entitled to compensation and expense reimbursement from the Receivership Assets, or as may be agreed upon by Plaintiff and the Receiver, and as subject to further order and approval of the court prior to any payment of compensation or expense reimbursement to the Receiver or the Retained Personnel. The Receiver shall be paid at the rate of $450 per hour, and Moglia Advisors and Nate Pettitt shall be paid at a rate between $200 and $400 per hour. Parr Brown shall be paid at a rate between $340 and $625 an hour. TechLaw Venture, Rajah & Tann, Maschoff Brennan, Andrews Advisory Group, and Teuscher Walpole, LLC, shall be paid at their respective prevailing rates.

(58) Within 15 days of the end of each month, the Receiver and his Retained Personnel may apply to the court (in Monthly Fee Application(s)) for compensation and expense reimbursement from the Receivership Estates. Prior to filing each Monthly Fee Application with the court, the Receiver and his Retained Personnel will serve upon counsel for Plaintiff and any other persons as Plaintiff may direct a complete copy of the proposed Monthly Fee

27

Application, together with all exhibits and relevant billing information. If Plaintiff has any objections, it will raise those objections within five business days to resolve them on a consensual basis with the Receiver or applicable Retained Personnel prior to the filing of any Monthly Fee Application. If no consensual resolution of any objection is reached, the filed Monthly Fee Application should be clearly marked as opposed. The Receiver and the Retained Personnel may not seek to recover fees and expenses incurred in connection with defending or prosecuting contested Monthly Fee Applications or in any other manner related to litigation involving payment or sources of funding for the Receiver's or Retained Personnel's compensation.

(59) The Receiver and his Retained Personnel shall keep detailed time records to support their Monthly Fee Applications. Time records must set forth in reasonable detail an appropriate narrative description of the services rendered. Any of the Retained Personnel that fails to file a Monthly Fee Statement for a particular month or months may subsequently submit a consolidated Monthly Fee Statement including any prior month or months.

(60) The sole source of funding for the payment of the reasonable fees and expenses of the Receiver and his Retained Personnel shall be the Receivership Assets identified and recovered by the Receiver or additional advances made by Plaintiff in its sole discretion. Plaintiff agrees that the Receiver may reserve cash proceeds from the recovery of Receivership Assets in an aggregate amount not to exceed $350,000 at any point to fund payment of accrued and/or future administrative and operational expenses of the Receivership, the Receiver, and his Retained Personnel, with $50,000 of such amount reserved and payable exclusively for operational expenses and the remainder reserved and

payable for administrative and professional expenses. To avoid doubt, Plaintiff shall not be liable for the payment of the fees and expenses of the Receiver and his Retained Personnel.

XV. Termination of Receivership

(61) Plaintiff shall be entitled to seek termination of the receivership upon motion to the court at any time.

SO ORDERED April 7, 2025.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge

29